Upon a simple contract of agency much extraneous matter is introduced by the bill and the Defendant's argument as to the claim which the Complainants had to the slaves before the Defendant purchased them, as their agent. To me it appears entirely immaterial what motives induced the deed of gift to Henry Williams, what were the terms or conditions thereof, or whether there was any gift at all. And the transfer from Henry to the Complainants, or to one of them, is of the same character. As well might a man charged with horse-stealing, avert the punishment of his offence, by shewing that the prosecutor had defrauded the former owner of the horse by getting him at half price. In this case, the agent is called on to transfer and surrender up property acquired *Page 65 
for his principal in execution of an express contract of agency, where he had used the Complainants' money. For the defendant by agreeing to advance the money for (81) his principal, made the money his principal's and gave to himself a right to call on him for so much loaned or advanced to his use: and no reason can be assigned why he should not transfer that legal title with which he clothed himself, either with a view of honestly performing his contract of agency, or with a dishonest intent of avoiding it. In either case he has no defence. When the question shall be brought before the Court, it will be time to consider whether these complainants are trustees for Henry Williams, either from the manner in which he left the property with them, or from any new engagement. It would be a disgrace to our law, if such subterfuges were to prevail.
Upon the other question raised in this case, that is, as to the power of this Court to decree a specific execution of a contract for the sale of slaves, I think it is not presented: For it is only required of the agent to fulfill his trust, and disrobe himself of that legal title with which he has iniquitously clothed himself. But if the question was presented, I have no doubt upon it; for all the principles which induce a court of Equity to compel a specific execution of a contract for a sale of lands, or some favorite personal chattel, apply with equal, if not stronger force, to the case of slaves.
The Master will therefore take an account of the annual hire or value of the slaves, since the Defendant took them into possession, with interest from the expiration of each year: also of the money advanced by the Defendant in their purchase, with interest to the time of the offer to pay to the wife of the Defendant; and upon Complainants' paying the difference, if there be any, the Defendant will transfer, by a quit claim bill of sale, to be approved by the Master, the slaves in question, with their increase since he had possession of them, with covenants against his incumbrances, and the claims of all persons derived under him, and immediately thereafter deliver to Complainants the said slaves with their said increase: and the Defendant will pay the costs of this suit, including the Master's fee for (82) performing the service hereby directed, and all expenses of carrying this decree into execution.
HALL, Judge, concurred.
Cited: Jones v. Ruffin, 14 N.C. 408; Kitchen v. Herring, 42 N.C. 193;Barnes v. Barnes, 65 N.C. 263; Branch v. Tomlinson, 77 N.C. 391;Paddock v. Davenport, 107 N.C. 716. *Page 66